1   Arthur S. Beeman (State Bar No. 237996)
    asbeeman@jonesday.com
2   Brett A. Lovejoy (State Bar No. 212942)
    blovejoy@jonesday.com
3   Noel Rodriguez (State Bar No. 228784)
    nrodriguez@jonesday.com
4   JONES DAY
    555 California Street, 26th Floor
5   San Francisco, CA  94104
    Telephone:    (415) 626-3939
6   Facsimile:    (415) 875-5700

7   Attorneys for Plaintiff
    ALEXX, INC.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11

12   **ALEXX, INC.,**                    | **Case No. CV 09-3623 CRB**

13              **Plaintiff,**           | **AMENDED STIPULATION AND**
                                         | **[PROPOSED] ORDER RE**
14         **v.**                        | **DISMISSAL WITH PREJUDICE**
                                         | **OF DEFENDANT CHARM ZONE,**
15   **CHARM ZONE, INC.,**               | **INC.**

16              **Defendant.**

17

18

19

20

21

22

23

24

25

26

27

28

SFI-645596v2

STIP. AND PROPOSED ORDER RE
DISMISSAL OF CHARM ZONE, INC.
CV 09-3623 CRB

PLEASE TAKE NOTICE that pursuant to the Settlement Agreement attached as Exhibit A and the stipulation of the remaining parties who have appeared in the above-entitled action:

1. Alexx Inc.'s complaint against Charm Zone, Inc. is dismissed in its entirety with prejudice;

2. Alexx Inc. and Charm Zone, Inc. shall each bear its own attorney's fees, expenses and costs; and

3. The Court, including the Honorable Charles R. Breyer, District Judge for the United States District Court for the Northern District of California, shall retain jurisdiction for the duration of approximately six months for the purpose of enforcing the terms of the attached Settlement Agreement.

STIPULATED AND AGREED TO:

Dated: July 16, 2010                    Jones Day

                                        By: /s/ Brett A. Lovejoy
                                            Brett A. Lovejoy

                                        Attorneys for Plaintiff
                                        ALEXX, INC.


Dated: July 16, 2010                    Ropers, Majeski, Kohn & Bentley

                                        By: /s/ Robert P. Andris
                                            Robert P. Andris

                                        Counsel for Defendant
                                        CHARM ZONE, INC.

IT IS SO ORDERED.

Dated: July     23  , 2010              By:
                                            The Honorable Charles R. Breyer
                                            United States District Judge for
                                            the Northern District of California

IT IS SO ORDERED

Judge Charles R. Breyer

- 1 -

... AND PROPOSED ORDER RE
DISMISSAL OF CHARM ZONE, INC.
CV 09-3623 CRB

# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into on July 12, 2010 by and between Alexx, Inc., a California corporation, having its principal place of business at 6430 Variel #101, Woodland Hills, California 91367 ("Plaintiff"), Charm Zone, Inc., a New York Corporation, having its principal place of business at 175 Allen Boulevard, Farmingdale, New York 11735 ("Defendant"), Young Kim, an individual owning Charm Zone, Inc. ("Mr. Kim") and Sylvia Kim, an individual managing Charm Zone, Inc. ("Ms. Kim") (collectively, Plaintiff, Defendant, Mr. Kim and Ms. Kim shall be referred to as the "Parties," or, individually, as a "Party").

# RECITALS

**WHEREAS**, Plaintiff and Defendant are litigants in a civil action pending in the United States District Court for the Northern District of California, captioned *Alexx, Inc. v. Charm Zone, Inc.*, Case No. 09-CV-3623 CRB (N.D. Cal.) (the "Lawsuit");

**WHEREAS**, Plaintiff is the assignee of United States Design Patent No. D539,526 S, and United States Patent Nos. 7,308,922 B2, and 7,537,032 B2 (the "Patents in Suit," as further defined below);

**WHEREAS**, Plaintiff is the owner of a copyright for its Finders Key Purse backercard, U.S. Registration No. VA0001398150 (the "Copyrighted Backercard");

**WHEREAS**, in the Lawsuit, Alexx asserts, *inter alia*, that Defendant has infringed the Patents in Suit and the Copyrighted Backercard;

**WHEREAS,** the Parties recognize the uncertainty of the outcome of disputed, complex litigation such as the Lawsuit and the extended period of time that it could take to resolve matters through litigation, and they wish to contain the fees, costs, and expenses associated with the Lawsuit and have independently concluded that their respective interests would be best served by compromising and thereby terminating and concluding the Lawsuit; and

**WHEREAS**, the Parties intend to bring to a close all current and prospective litigation relating to Plaintiff's claim including alleged infringement of the Patents in Suit and the Copyrighted Backercard by Defendant's products, as set forth herein.

**NOW, THEREFORE**, for good, valuable, and reciprocal consideration given and received, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1.      **DEFINITIONS**.

1.1      "Affiliate" means any entity that directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with a Party.  For purposes of this definition, "control" of a corporation or business entity means (a) the direct or indirect ownership of fifty percent (50%) or more of the voting stock or other voting interests or interest in the profits of such corporation or business entity, or (b) the ability to appoint and to dismiss a majority of its board of directors or otherwise to direct the activities of such corporation or business entity.

1.2      "Effective Date" has the meaning set forth in Section 3.1 below.

1.3      "Lawsuit" has the meaning set forth in the Recitals above.

1.4      "Party(ies)" has the meaning set forth in the Preamble above.

1.5      "Stipulations" has the meaning set forth in Section 2.1 below.

1.6      "Alexx" means Alexx, Inc. and, solely with respect to Sections 2.2., 2.3, 4.1, 4.2 4.3, 4.4, 4.5, and 4.6 below, shall include and encompass Alexx, Inc.'s separate divisions, subsidiaries, sub-entities, joint-ventures, Affiliates, owners, executives, officers, directors, administrators, successors, agents, insurers, underwriters, legal representatives and present, past or future parents and includes any successors in interest to or assigns of the Patents in Suit.

1.7      "Charm Zone" means Charm Zone, Inc. and shall include and encompass Charm Zone, Inc.'s separate divisions, subsidiaries, sub-entities, joint-ventures, Affiliates, owners,

executives, officers, directors, administrators, successors, agents, legal representatives and present, past or future parents, as well as Young Kim and Sylvia Kim.

1.8    "Patents in Suit" mean United States Design Patent No. D539,526 S, United States Patent No. 7,308,922 B2, and United States Patent No. 7,537,032 B2, and solely with respect to Sections 2.2, 2.3, 4.1, 4.2, 4.3, 4.4., 4.5, 4.6, 6.2 and 7.1 below, shall include (i) any reissues, reexaminations, renewals or extensions of any of the foregoing patents, (ii) any patents issuing from continuations, continuations-in-part and divisions of the applications on which any of the foregoing patents are based, (iii) any patent applications and issued patents which claim priority from the same application or applications as any of the foregoing patents, and (iv) any foreign equivalents of any of the foregoing patents.

1.9    "Assigned Patent" or "United States Patent No. 7,546,753 B1" means United States Patent No. 7,546,753 B1 and shall include (i) any reissues, reexaminations, renewals or extensions of the foregoing patent, (ii) any patents issuing from continuations, continuations-in-part and divisions of the application on which the foregoing patent is based, (iii) any patent applications and issued patents which claim priority from the same application as the foregoing patent, and (iv) any foreign equivalents of the foregoing patent.

1.10   "Key Locator Apparatus" means an apparatus for retaining keys or other easily misplaced objects, such apparatus comprising, in combination:  a) a first member comprising a first end portion and a second end portion, the first end portion and the second end portion in a bent or hinged relationship with respect to each other; and b) a second member including a clasp, hook, or key ring for selectively retaining at least one key or other easily misplaced object; wherein (i) the first member is configured to allow the apparatus to hang from, clip to, or otherwise attach to an edge such that the first end portion is at least partially on a first side of the edge and the second end portion is at least partially on an opposing, second side, of the edge, (ii) the first end portion of the first member is configured to either (a) directly engage with the second member or (b) indirectly engage with the second member through one or more intermediate rings or other engagement means, (iii) the second end portion of the first member is configured to hold, fix, or attach to an ornament, flashlight, or cosmetic container at least when the apparatus hangs, clips, or otherwise attaches to the edge, (iv) the ornament, flashlight, or

cosmetic container is removable or nonremovable from the second end portion, (v) the first end portion and the second end portion are either in moveable or fixed relationship with respect to each other, (vi) the first end portion and the second end portion each independently have no magnetic means or magnetic means, (vii) the first member in of itself being a single member or multiple members joined together, (viii) the first end portion being either straight or bent, and (ix) the second end portion being either straight or bent.  Examples of the Key Locator Apparatus include, but are not limited to, (1) any embodiment of any of the claims of the Patents in Suit or the Assigned Patent, (2) the Charm Zone products variously identified as Version 1, Version 2, Version 3, and Version 4 in Sections 1.11 through 1.14 of this Agreement, and (3) all Charm Zone products variously sold by Defendant, Mr. Kim or Ms. Kim under the marks "Handbag Key Purse", "Purse Key Finder" or "Keypers Klip".

1.11    "Version 1" means a Key Locator Apparatus sold by Charm Zone that is substantially similar to the Key Locator Apparatus depicted in Exhibit 1 to this Agreement.

1.12    "Version 2" means a Key Locator Apparatus sold by Charm Zone that is substantially similar to the Key Locator Apparatus depicted in Exhibit 2 to this Agreement.

1.13    "Version 3" means a Key Locator Apparatus sold by Charm Zone that is substantially similar to the Key Locator Apparatus depicted in Exhibit 3 to this Agreement.

1.14    "Version 4" means a Key Locator Apparatus developed by Charm Zone that is substantially similar to the Key Locator Apparatus depicted in Exhibit 4 to this Agreement.

1.15    "Key Locator Market" means the manufacture, importation, distribution, sale, offer for sale, donation, development, or promotion of a Key Locator Apparatus in any country in the world.

**2.       DISMISSAL AND RELEASES.**

2.1    Dismissal of Lawsuit.  Approximately six months after the Effective Date of this Agreement and following the Enforcement Term set forth in Section 5.1, the Parties shall execute the Stipulation of Dismissal in the form attached as Exhibit 5 (the "Stipulation") which the Parties intend will dismiss Plaintiff's claims against Defendant in the Lawsuit with prejudice

in accordance with Federal Rule of Civil Procedure 41(a)(1), with each Party bearing its own costs and fees.  Once executed, Alexx shall cause its counsel to file within fourteen (14) Court days the Stipulation of Dismissal for the case *Alexx, Inc. v. Charm Zone, Inc.*, Case No. 09-CV-3623 CRB (N.D. Cal.).

2.2     <u>Release by Plaintiff</u>.  Alexx, in consideration of the agreements set forth herein, and intending to be legally bound, irrevocably releases and forever discharges Charm Zone from any and all actions, causes of action, claims, suits, obligations, liabilities, and demands whatsoever, whether in law, in equity or otherwise anywhere in the world, whether known or unknown, asserted or unasserted, existing as of the Effective Date, based upon, arising out of or in any way relating to (a) the Lawsuit or (b) the Patents in Suit or (c) the Copyrighted Backercard.  This release does not apply to any claims based upon or arising out of the rights and obligations created by this Agreement.  Alexx also releases any patent or copyright infringement claims it may have against Charm Zone's customers for sales of Versions 1, 2 or 3 occurring before the Effective Date of this Agreement.

2.3     <u>Release by Defendant</u>.  Charm Zone, in consideration of the agreements set forth herein, and intending to be legally bound, irrevocably releases and forever discharges Alexx from any and all actions, causes of action, claims, suits, obligations, liabilities, and demands whatsoever, whether in law, in equity or otherwise anywhere in the world, whether known or unknown, asserted or unasserted, existing as of the Effective Date, based upon, arising out of or in any way relating to (a) the Lawsuit or (b) the Patents in Suit or (c) the Copyrighted Backercard.  This release does not apply to any claims based upon or arising out of the rights and obligations created by this Agreement.

2.4     <u>The Parties' Waiver of California Civil Code Section 1542</u>.  It is expressly understood by the Parties that Section 1542 of the Civil Code of California provides as follows: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER, MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.  The provisions of Section 1542 of the Civil Code of California if in any way applicable to this

5

Agreement, as well as the provisions of any and all comparable, equivalent or similar statutes and principals of common law, or other decisional law of any and all of the States of the United States or of the United States, are hereby knowingly and voluntarily waived and relinquished by the Parties.

## 3.    EFFECTIVE DATE.

3.1    This Agreement will be effective as of the date that it has been signed by each Party (the "Effective Date").

## 4.    COVENANTS.

4.1    Charm Zone hereby covenants that within seven (7) days of the Effective Date, Charm Zone shall assign, transfer and set over, unto Alexx, Charm Zone's entire right, title and interest in, to and under United States Patent Number 7,546,753 B1 and all divisionals, renewals, continuations, and foreign counterparts thereof.

4.2    Charm Zone hereby covenants that Charm Zone has full right to convey the entire interest assigned in Section 4.1, and that Charm Zone has not executed, and will not execute, any agreement in conflict with the assignment set forth in Section 4.1.

4.3    Charm Zone hereby covenants and agrees that Charm Zone will testify in any legal proceeding, sign all lawful papers, execute all divisional, continuing, reissue and foreign applications, make all rightful oaths, and generally do everything reasonably possible to aid Alexx, Alexx's successors, legal representatives and assigns, in obtaining, enforcing, and maintaining proper protection for the invention encompassed by United States Patent Number 7,546,753 B1 in all countries.  Alexx shall pay for any costs incurred by such cooperation.  Any communication by Alexx to Charm Zone will be through Alexx's attorney.

4.4    Charm Zone hereby covenants that within seven (7) days of the Effective Date, Charm Zone shall communicate to Alexx, Alexx's successors, legal representatives and assigns, any facts known to Charm Zone relating to the conception and reduction to practice of Version 4, including the identity of each inventor of Version 4, and shall assign, transfer and set over, unto Alexx, Charm Zone's entire right, title and interest in, to and under the invention embodied by Version 4.

4.5    Charm Zone hereby covenants that Charm Zone has full rights to convey the entire interest assigned in Section 4.4, and that Charm Zone has not executed, and will not execute, any agreement in conflict with such assignment.

4.6    Charm Zone hereby covenants and agrees that it will testify in any legal proceeding, sign all lawful papers, execute all patent applications for Version 4 including all divisional, continuing, reissue and foreign applications, make all rightful oaths, and generally do everything reasonably possible to aid Alexx, its successors, legal representatives and assigns in (i) assigning all patent rights for the invention assigned in Section 4.4 to Alexx and (ii) obtaining, enforcing, and maintaining proper protection for the invention assigned in Section 4.4 in all countries.  Alexx shall pay for any costs incurred by such cooperation.  Any communication by Alexx to Charm Zone will be through Alexx's attorney.

4.7    Charm Zone hereby covenants that within seven (7) days of the Effective Date, Charm Zone shall exit, or cease participation in, the Key Locator Market.

4.8    Charm Zone hereby covenants that within seven (7) days of the Effective Date, Charm Zone shall provide to Alexx its remaining inventory of Key Locator Apparatus, including any Key Locator Apparatus that Charm Zone has ordered but has not yet received.

4.9    Charm Zone hereby covenants that (i) within seven (7) days of the Effective Date, Charm Zone shall remove all offers to sell Keypers Klips or any Key Locator Apparatus from websites controlled or operated by Charm Zone (*e.g.*, www.dajoajewelry.com), (ii) within seven (7) days of the Effective Date, Charm Zone shall provide Alexx with the URL of each website controlled or operated by Charm Zone, (iii) during the Term of this Agreement, Charm Zone will notify Alexx of the creation of any new website that is to be controlled or operated by Charm Zone within ninety (90) days of such creation, and (iv) within seven (7) days of the Effective Date, Charm Zone will prominently post the following message on each website controlled or operated by Charm Zone for the period of six months:  CHARM ZONE, INC. AND DAJOA JEWELRY HAVE CEASED MANUFACTURING, DISTRIBUTING, IMPORTING AND SELLING KEYPERS KLIPS.  After the expiration of six months from posting the above-message, Charm Zone shall remove all references to Keypers Klips or any Key Locator Apparatus from any website controlled or operated by Charm Zone.  During the Term of this

Agreement, Charm Zone will provide Alexx with a login and password to each password protected website controlled or operated by Charm Zone so that Alexx may verify compliance with this covenant.

4.10    Charm Zone hereby covenants that within seven (7) days of the Effective Date, it shall not use a purse-shaped backercard to advertise, display, or ship with any of its products.

4.11    Charm Zone hereby covenants that the Patents in Suit and the Assigned Patent are valid and enforceable.

4.12    Charm Zone hereby covenants that it shall not suggest, initiate or engage in any re-examination proceedings involving the Patents in Suit or the Assigned Patent.

4.13    Charm Zone hereby covenants that, absent legal compulsion, it shall not assist any individual, person or entity against whom Alexx initiates a patent or copyright infringement lawsuit.

4.14    Charm Zone hereby covenants that it shall not apply for patent, copyright, or trademark protection for any Key Locator Apparatus in any country in the world.

## 5.    ENFORCEMENT OF SETTLEMENT AGREEMENT.

5.1    The Parties agree that the Court will retain jurisdiction over this case for a period of approximately six months after the Effective Date of this Agreement (the "Enforcement Term") to enter any order necessary to ensure compliance with and implementation of the terms and conditions of this Agreement.  The Parties agree that the Court shall have the power to enforce this Agreement through specific performance and all other remedies permitted by law. The Parties agree that this Court's jurisdiction will terminate after entry of the dismissal identified in Section 2.1 above.

5.2    The Parties agree and acknowledge that they must comply with the terms and conditions of this Agreement during the term this Agreement, identified in Section 7.1 below, and that such term extends beyond the Enforcement Term.  If any dispute arising out of this Agreement occurs after the Enforcement Term, the federal and state courts in San Francisco, California, shall have exclusive jurisdiction to adjudicate any such dispute.  Each Party hereby

expressly consents to (i) the personal jurisdiction of the federal and state courts within San Francisco, California, and (ii) service of process being effected upon it by registered mail sent to the address set forth in the preamble of this Agreement or such other address as may be expressly updated in writing from time to time.

5.3     In the event litigation is necessary to enforce a provision or provisions of this Agreement, all costs, expenses and attorneys' fees, whether taxable or not, shall be paid by the non–prevailing party or parties to the prevailing party or parties.

## 6.     REPRESENTATIONS AND WARRANTIES

6.1     <u>By The Parties</u>.  Each of the Parties represents and warrants that (a) it has the full power and authority to enter into this Agreement and to perform its obligations hereunder, (b) this Agreement is binding on and enforceable against it by the other Party in accordance with the terms hereof, and (c) the compliance by each of the Parties with its obligations hereunder will not conflict with or result in a breach of any agreement under which such Party is bound.

6.2     Alexx represents and warrants that, as of the Effective Date, (a) it is the owner by assignment of all right, title and interest in, to and under the Patents in Suit and U.S. Registration No. VA0001398150   and (b) it has not assigned or transferred to any other person(s) or entity(ies) any of its claims, demands or causes of action settled and released herein.

6.3     Charm Zone represents and warrants that, as of the Effective Date, (a) it is the owner by assignment of all right, title and interest in, to and under the Assigned Patent and (b) it has not assigned or transferred to any other person(s) or entity(ies) any of its claims, demands or causes of action settled and released herein.

6.4     Charm Zone represents and warrants that, other than the Assigned Patent, it has not applied for patent, copyright or trademark protection for Version 4, or any other Key Locator Apparatus, in any country in the world.

6.5     Charm Zone represents and warrants that it has not suggested, initiated or engaged in any re-examination proceedings involving the Patents in Suit.

### 7.      TERM

7.1      This Agreement shall continue in force until seventy years after the death of Sandra Stein.

### 8.      STATEMENTS REGARDING THIS AGREEMENT

8.1      The Parties agree that, absent legal compulsion, the only information relating to this Agreement that any Party to this Agreement may provide to any third party is (1) this Agreement itself or (2) the press releases attached as Exhibit 6 or 7 to this Agreement.

### 9.      GENERAL

9.1      <u>Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the laws of the State of California (regardless of its or any other jurisdiction's choice-of-law principles).

9.2      <u>Further Assurances</u>.  Each Party agrees to take or cause to be taken such further actions, and to execute, deliver and file or cause to be executed, delivered and filed such further documents and instruments, and to obtain such consents, as may be reasonably required or requested in order to effectuate fully the purposes, terms and conditions of this Agreement.

9.3      <u>Severability</u>.   If any term, clause or provision of this Agreement shall be determined to be invalid or unenforceable, the unenforceable or invalid article or provisions shall be deemed deleted from this Agreement and replaced with an article or provision which accomplishes, to the extent possible, the original business purpose of such article or provision in an enforceable and valid manner, and the validity of any other term, clause or provision shall not be affected.

9.4      <u>Counterparts</u>.  This Agreement may be executed (including, without limitation, by facsimile signature) in counterparts, with the same effect as if the Parties had signed the same document.  Each counterpart so executed shall be deemed to be an original, and both such counterparts shall be construed together and shall constitute one Agreement.

9.5      <u>Entire Agreement; Amendment</u>.  This Agreement (including the exhibits attached hereto, which are incorporated herein by reference) constitutes the entire understanding and only

agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous negotiations, representations, agreements and understandings, written or oral, that the Parties may have reached with respect to the subject matter hereof.  No agreements altering or supplementing the terms hereof may be made except by means of a written document signed by the duly authorized representatives of each of the Parties.

9.6     Agency.  Nothing herein contained shall be deemed to create or give rise to an agency, joint venture, or partnership relationship or any fiduciary duty between the Parties.

9.7     Waivers and Amendments.  Failure by either Party to enforce any provision of this Agreement shall not be deemed a waiver of that provision or of any other provision of this Agreement.  Any claim of waiver of any right, obligation, term or condition of this Agreement and any claim that any provision of this Agreement has been modified or amended shall be null and void unless such waiver, modification, or amendment is made in writing and signed by authorized representatives of both Parties.

9.8     Assignment.  This Agreement may not be assigned by either Party without the prior written consent of the other Party, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, that Alexx may, without obtaining the consent of the Defendant, upon written notice to the Defendant, assign its rights and obligations under this Agreement (in whole but not in part) to any of its Affiliates or to any third party in connection with the merger of Alexx with such third party, or the sale of all or substantially all of the business of Alexx relating to the subject matter of this Agreement to such third party; provided that such Affiliate or third party, as the case may be, agrees in writing to assume all obligations hereunder.

9.9     Successors and Assigns.  This Agreement shall be binding upon and inure to the benefit of each Party's respective successors and assigns.

9.10    Notices.  All notices required or permitted to be given hereunder shall be given in writing, sent by facsimile and first class mail, and shall be sent as follows:

PAGE 1/2 • RCVD AT 7/12/2010 5:45:50 PM [Pacific Daylight Time] • SVR:SFFXO1MS/3 • DNIS:36899 • CSID:818 8877068 • DURATION (mm-ss):00-34

Case 3:09-cv-03623-CRB   Document 88   Filed 07/23/10   Page 15 of 24

If to Alexx:

Sandra Stein
Alexx, Inc.
6520 Platt Avenue, Suite 633
West Hills, California 91307
Fax:  404-842-7001

With a copy to:

Brett A. Lovejoy
Jones Day
555 California Avenue, 26th Floor
San Francisco, California 94104
Fax:  415-875-5700

If to Charm Zone:

Charm Zone, Inc.
175 Allen Boulevard
Farmingdale, New York 11735
Fax:  631-393-0451

    IN  WITNESS  WHEREOF,  the  Parties  hereto  have  caused  their  duly  authorized representatives to execute this Agreement.

ALEXX, INC., a California Corporation

By: _Sandra Stein_

Name: _Sandra Stein_

Date: _7/12/10_

CHARM ZONE, INC., a New York Corporation

By: _____

Name: _____

Date: _____

YOUNG KIM, an individual

By: _____

Name: _____

Date: _____

SYLVIA KIM, an individual

By: _____

Name: _____

Date_____

SFI-645454v3

12

If to Alexx:

Sandra Stein
Alexx, Inc.
6520 Platt Avenue, Suite 633
West Hills, California 91307
Fax: 404-842-7001

With a copy to:

Brett A. Lovejoy
Jones Day
555 California Avenue, 26th Floor
San Francisco, California 94104
Fax: 415-875-5700

If to Charm Zone:

Charm Zone, Inc.
175 Allen Boulevard
Farmingdale, New York 11735
Fax: 631-393-0451

**IN WITNESS WHEREOF**, the Parties hereto have caused their duly authorized representatives to execute this Agreement.

**ALEXX, INC., a California Corporation**

By: _____

Name: _____

Date: _____

**CHARM ZONE, INC., a New York Corporation**

By: _____

Name: _Young K. Kim_

Date: _7/16/10_

**YOUNG KIM, an individual**

By: _____

Name: _Young K. Kim_

Date: _7/16/10_

**SYLVIA KIM, an individual**

By: _____

Name: _SYLVIA KIM_

Date _7/16/10_

**EXHIBIT 1**



**EXHIBIT 2**



100

**EXHIBIT 3**



**EXHIBIT 4**



EXHIBIT 5

1   Arthur S. Beeman (State Bar No. 237996)
asbeeman@jonesday.com
2   Brett A. Lovejoy (State Bar No. 212942)
blovejoy@jonesday.com
3   Noel Rodriguez (State Bar No. 228784)
nrodriguez@jonesday.com
4   JONES DAY
555 California Street, 26th Floor
5   San Francisco, CA  94104
Telephone:   (415) 626-3939
6   Facsimile:   (415) 875-5700

7   Attorneys for Plaintiff
ALEXX, INC.

8

9                UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11

12   **ALEXX, INC.,**              **Case No. 09-3623 CRB**

13         **Plaintiff,**       **STIPULATION AND NOTICE OF**
**DISMISSAL WITH PREJUDICE**
14        **v.**             **OF ONLY REMAINING**
**DEFENDANT CHARM ZONE,**
15   **CHARM ZONE, INC.,**      **INC. PURSUANT TO FED. R. CIV.**
**P. RULE 41(a)(1)(A)**
16        **Defendant.**

17

18

19

20

21

22

23

24

25

26

27

28

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) and the stipulation of the remaining parties who have appeared in the above-entitled action:

1.     Alexx Inc.'s complaint against Charm Zone, Inc. is dismissed in its entirety with prejudice; and

2.     Alexx Inc. and Charm Zone, Inc. shall each bear its own attorney's fees, expenses and costs.

STIPULATED AND AGREED TO:


Dated: _____, 2010                    Jones Day


                                               By: _____
                                                   Brett A. Lovejoy

                                               Attorneys for Plaintiff
                                               ALEXX, INC.


Dated: _____, 2010                    Ropers, Majeski, Kohn & Bentley


                                               By: _____
                                                   Lael Andara

                                               Counsel for Defendant
                                               CHARM ZONE, INC.


SFI-645596v1

NOTICE OF DISMISSAL OF
CHARM ZONE, INC. 09-3623 CRB

**EXHIBIT 6**

**PRESS RELEASE**



Alexx, Inc. is the maker of the patented Finders Key Purse key locators, and the assignee of United States Patent Nos. D539,526 S; 7,308,922 B2, and 7,537,032 B2.

On August 7, 2009, Alexx, Inc. sued Charm Zone, Inc. in the United States District Court for the Northern District of California for infringement of Alexx's patents and other intellectual property, and for unfair competition, unjust enrichment and injunctive relief.

On July 12, 2010, Alexx and Charm Zone reached a settlement of Alexx's claims against Charm Zone.  Under that settlement agreement, Charm Zone agreed to cease manufacturing, importing, distributing, selling and offering to sell key locator products, including those that have been sold under the marks "Keypers Klip", "Handbag Key Purse", and "Purse Key Finder". Charm Zone also agreed to assign all its intellectual property rights in key locators to Alexx.  As such, Alexx is now the owner by assignment of United States Patent No. 7,546,753 B1.

Alexx is committed to providing high-quality, fashionable and useful purse accessories to the market, and to vigorously defending its intellectual property rights against infringers.  For more information on Alexx, Inc., its Finders Key Purse key locators and other products, please visit www.finderskeypurse.com.

**EXHIBIT 7**

**PRESS RELEASE**

On August 7, 2009, Alexx, Inc. sued Charm Zone, Inc. in the United States District Court for the Northern District of California for infringement of Alexx's patents and other intellectual property, and for unfair competition, unjust enrichment and injunctive relief.

Alexx and Charm Zone reached a settlement.  Under that settlement agreement, Charm Zone agreed to cease manufacturing, importing, distributing, selling and offering to sell key locator products, including those that have been sold under the marks "Keypers Klip", "Handbag Key Purse", and "Purse Key Finder".  Charm Zone also agreed to assign all its intellectual property rights in key locators to Alexx.  As such, Alexx is now the owner by assignment of United States Patent No. 7,546,753 B1.