United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXX, INC., | No. C 09-03623 CRB |
| Plaintiff, | **ORDER GRANTING MOTION FOR DAMAGES AND ATTORNEYS' FEES** |
| v. | |
| CHARM ZONE, INC. ET AL, | |
| Defendant. | |

Plaintiff Alexx moves the Court to award it damages and attorneys' fees for Defendant Charm Zone's breach of the settlement agreement in this case. A motion hearing was held on January 7, 2011. The Court has considered the parties' briefs, arguments, and supplemental briefing, and hereby GRANTS Plaintiff's Motion.

**I.  Discussion**

**A.  Damages**

California Civil Code section 3300 provides that "[f]or the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Alexx asks the Court to award it $396,312 in damages to compensate it for its inability to sell the Charm Zone key locators that it was entitled to under the Settlement Agreement. Mot. at 2. This number represents

the 113,232 key locators Charm Zone was to deliver to Alexx by July 19, 2010, multiplied by a price of $3.50 per key locator. Id. at 2-3. Charm Zone argues that the Court should consider specific performance, that no damages are appropriate, that if any damages are awarded, the amount should be much lower than what Alexx seeks. Opp. at 1.

### 1. Entitlement to Damages

As an initial matter, the Court rejects Charm Zone's offer of specific performance. Ordering Charm Zone to produce more infringing key locators for Alexx to sell is not a viable remedy for Charm Zone's breach.

Charm Zone's next argument, that the Settlement Agreement is void because there was no meeting of the minds, Opp. at 6-7, is also unavailing. The Court already found a breach of contract; it therefore also found that the contract was enforceable. See dckt. no. 107 at 5. Moreover, Charm Zone's argument that it misunderstood the provision in the Settlement Agreement about returning inventory is at best a unilateral mistake, and not a basis for nullifying the contract given these facts. See Grenall v. United of Omaha Life Ins. Co., 165 Cal. App. 4th 188, 193 (2008).

Charm Zone further contends that Alexx is not entitled to lost profits because it was not reasonably foreseeable that Alexx would sell the Charm Zone key locators, as Alexx had only expressed an interest in destroying them. Opp. at 7-8. While damages must be foreseeable and reasonably certain, courts do "not require that the defendant should have had the resulting injury actually in contemplation," see Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 458 (1990), and damages need not be proven with "mathematical precision," see Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified School Dist., 34 Cal. 4th 960, 975 (2004) (internal quotations omitted).

Here it was reasonably foreseeable that Alexx, having turned down a $100,000 cash payment as a term of settlement, would opt instead for Charm Zone's remaining inventory because it believed that it could make a profit from that inventory. See Reply at 5; Stein Decl. ¶ 5 ("I chose the entire inventory of Key Locator Apparatus in lieu of the cash settlement because I believed the $100,000 cash settlement substantially undervalued the

2

value of the Charm Zone inventory") and ¶ 6 (describing sales plan for Charm Zone units). That Alexx's principal apparently characterized the Charm Zone units as "junk" in the context of a negotiation, see Kim Decl. ¶ 4, hardly renders unforeseeable Alexx subsequently selling Charm Zone's key locators. Lost profits are appropriate.

### 2.     Calculation of Damages

At the motion hearing, the Court explained that it would calculate Alexx's damages award by determining the profits that Alexx would have made by selling the key locators, and then subtracting whatever costs Alexx would have had to undertake to sell them.

The first question is therefore what profit Alexx would have realized by selling the Charm Zone units. Alexx asks the Court to calculate its lost profits at $3.50 per unit. Mot. at 2-3. But Alexx had represented to the Court that its plan was to sell the Charm Zone key locators to "existing purchasers of the Charm Zone Key Locator Apparatus." See Stein Decl. ¶ 6. Those customers usually paid between $2 and $2.50 per unit. Kim Decl. ¶ 18. Accordingly, the Court finds that Alexx would have earned approximately $2.50 per unit, multiplied by the 113,232 units, for $283,080 of profits.

The second, and more difficult question, is what it would have cost Alexx to sell the Charm Zone Units. At the motion hearing, the Court asked Alexx to submit a supplemental declaration explaining how much it would cost to sell the Charm Zone key locators. Alexx submitted a declaration from its principal asserting that Alexx would sell the Charm Zone units to "house accounts" to which Alexx "regularly sell[s] the Alexx product," and that it would only cost $400 in marketing expenses to sell all 113,232 Charm Zone units. See Stein Decl. Per Court Order of Jan. 7, 2010 (dckt. no. 123) ¶¶ 5-8.[1] Charm Zone subsequently filed a declaration, to which Alexx objects, see dckt. no. 125, asserting that $6,721, and not

---

[1] Alexx reaches this number by assuming that it would only take 20 hours to call each of its 4,033 house accounts, and that its marketer is paid $20 per hour, and so 20 x $20 is $400. Stein Decl. Per Court Order of Jan. 7, 2010 (dckt. no. 123) ¶8.

3

1 $400, is the appropriate measure of the marketing expenses. Kim Decl. in Opp. to Pltf's
2 Mot. for Order Setting Damages (dckt. no. 124) ¶ 15.[2]
3 The only numbers before the Court pertain to marketing the Charm Zone units to
4 Alexx house accounts, and not to Charm Zone's customers, as was Alexx's plan. In light of
5 this distinction, the Court finds Charm Zone's calculation more reasonable. Marketing the
6 infringing Charm Zone key locators would likely be more complicated and take more effort
7 than selling Alexx's own product (about which no explanation would be needed), and so
8 Alexx's estimate of 20 hours is unreasonably low. The Court will instead subtract from the
9 $283,080 of profits Charm Zone's proposed $6,720, yielding a total damages award of
10 $276, 360, a number well above the $100,000 figure that Alexx declined in settlement
11 negotiations.[3]

### B.   Fees

The parties' Settlement Agreement, at section 5.3, provides that the losing party pay fees and costs in the event of an enforcement action. See dckt. no. 107 at 6. This Court's order granting the motion to enforce the settlement specifically ordered Charm Zone to pay Alexx's fees and costs. Id.[4] Alexx requests a total of $34,596.92 ($33,867 in fees and $729.92 in costs). Reply at 1-2, n.1. Alexx submitted a declaration accounting for the hours billed by the various Jones Day attorneys and one paralegal who worked on the case, see Lovejoy Decl. in Support of Reply Ex. A, and those bills are reasonable. That is the only requirement the fee award must meet under California Civil Code § 1717 ("[r]easonable attorney's fees shall be fixed by the court"). Though Charm Zone argues that "the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate," Opp. at 12 (citing PLCM

---

[2] Charm Zone reaches this number by assuming that each call to Alexx's 4,033 house accounts would take about five minutes (for a total of 20,165 minutes, or about 336 hours), that Alexx's marketer is paid $20 per hour, and so 336 x $20 is $6,720. Id. ¶ 15.

[3] The Court declines to award Alexx Charm Zone's manufacturing costs, to which it is not entitled under any plausible damages theory. See Reply at 3-4.

[4] Charm Zone's argument that Alexx is not the prevailing party, Opp. at 2, is thus moot.

4

Group, Inc. v. Drezler, 22 Cal. 4th 1084, 1095 (2002)), Charm Zone does not argue either that the hours expended (58.1) or the hourly rate charged (ranging from $400 to $800), see Reply at 9, were unreasonable. The fees also reflect a 10% discount, and do not include the cost of litigating this Motion. Reply at 2, 9. The amount requested is reasonable.

**II.   Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion, awarding Alexx $276, 360 in damages and $34,596.92 in fees and costs.

**IT IS SO ORDERED.**

Dated: January 26, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE